IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50560
_____


LUIS TEIJEIRO, JOSE ARMENDARIZ
and LIONEL NAVA,

Plaintiffs-Appellants,

versus

YSLETA INDEPENDENT SCHOOL DISTRICT,

Defendant-Appellee.

_____

Appeal from the United States District Court for
the Western District of Texas
(EP-91-CV-12)
_____

July 29, 1996

Before REAVLEY, KING and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-appellants Luis Teijeiro, Jose Armendariz, and

Lionel Nava, Hispanic administrators in defendant-appellee Ysleta

Independent School District (Ysleta), appeal the judgment as a

matter of law entered against them on their claims of national

origin discrimination in promotion and retaliation for filing

grievances and this lawsuit.  The plaintiffs also appeal the

dismissal of two claims on limitations grounds and various

---

[*] Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

evidentiary rulings made by the district court.  After a careful
review of the record, we affirm.

PROCEDURAL HISTORY

The plaintiffs originally brought this case in state court
in 1987, alleging employment discrimination in violation of
Tex.Rev.Civ.Stat.Ann. art. 5221k.[1]  On January 4, 1991, the
plaintiffs filed their Third Amended Original Petition in state
court, adding a federal claim that Ysleta had violated 42 U.S.C.
§ 1983 by retaliating against the plaintiffs for having brought
the original state lawsuit.  Ysleta removed to federal district
court, after which the plaintiffs filed a Fourth Amended
complaint, expanding the § 1983 claims and adding allegations of
violations of 42 U.S.C. § 1981.

On July 18, 1991, the federal district court dismissed
Teijeiro's art. 5221k claims, based on an earlier ruling by the
state court dismissing his claims for having been brought more
than one year after filing a complaint with the Texas Commission
on Human Rights.

On June 19, 1995, Ysleta renewed its motion to dismiss the §
1983 claims on limitations grounds after the plaintiffs' pretrial
order indicated an intent to pursue claims relating to only six

---

[1] Article 5221k was repealed and is now codified as Tex.
Labor Code Ann. § 21.051 (Vernon 1994) (effective September 1,
1993).  Because the plaintiffs filed their complaint before
September 1, 1993, we look to article 5221k.

jobs.  The court dismissed two of the § 1983 claims on limitations grounds, to be discussed below.  After this ruling, the trial centered on discrimination in filling the following four positions:

| Plaintiff | Position | Date |
|-----------|----------|------|
| Teijeiro | Asst. Principal, Riverside H.S. | 5/28/86 |
| Teijeiro | Principal, Hanks H.S. | 8/8/89 |
| Nava & Armen. | Principal, Parkland H.S. | 2/10/87 |
| Armen. | Principal, Scotsdale Elem. School | 8/26/86 |

At the close of the Plaintiffs' case in chief, the district court granted Ysleta's motion for judgment as a matter of law.  This appeal followed.

ANALYSIS

I. Dismissal of Claims Based on the Statute of Limitations

The district court dismissed claims of discrimination in promotion (1) by Nava and Armendariz, to the principalship of Hanks High School on August 28, 1987; and (2) by Nava, to the principalship of Ysleta Middle School on February 14, 1989.  It is well established that in Texas a two-year statute of limitations applies to § 1983 claims,[2] and that the clock begins to run when the plaintiff knew the position he sought had been

---

[2] Braden v. Texas A&M Univ. Sys., 636 F.2d 90 (5th Cir. 1981).

filled.[3]  The plaintiffs did not raise a claim concerning the two positions above until they filed their Fourth Amended Petition on April 24, 1991, more than two years after they knew that they had not received the promotions.

The plaintiffs argue that the new claims relate back to the original petition under Fed.R.Civ.P. 15(c)(2) because they arise out of the same ongoing discriminatory conduct set forth in the original pleadings.[4]  The actions complained of in the amended complaint did not "arise out of" and were not consequences of the discriminatory acts alleged originally.  Instead, the claims in the amended complaint are best characterized as separate, discriminatory acts, not acts resulting from one continuous wrong.  There is no relation back, and the district court properly dismissed the claims on limitations grounds.

II. Judgment As a Matter of Law

The district court entered judgment as a matter of law[5] on the plaintiffs' claims for failure to promote and retaliation.

---

[3] See Chardon v. Fernandez, 102 S.Ct. 28, 29 (1981) (clock begins to run when the discriminatory act occurs).

[4] Fed.R.Civ.P. 15(c) states in pertinent part:

c.    Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . .

[5] See Fed.R.Civ.P. 50(a).

We review that action de novo.[6] Judgment as a matter of law is appropriate if the evidence at trial points so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.[7]

A. Claims under 42 U.S.C. §§ 1981 and 1983

The plaintiffs brought claims against Ysleta under 42 U.S.C. §§ 1981 and 1983 alleging discrimination in promotion and retaliation for filing grievances and this lawsuit.  In order to hold a governmental unit liable for discrimination or retaliation, a plaintiff must prove that the conduct occurred pursuant to official policy.[8]  Official policy is either:

> (1) A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.[9]

---

[6] Wheat v. Pfizer, Inc., 31 F.3d 340, 342 (5th Cir. 1994).

[7] Id.

[8] Monell v. Dept. of Social Servs. of City of N.Y., 98 S.Ct. 2018, 2036 (1978); Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (adopting a definition of "official policy"), modified on other grounds on reh'g, 739 F.2d 993 (5th Cir. 1984) (en banc).

[9] Webster, 735 F.2d at 841.

In Texas, the school board of trustees is the final policymaker for the school district.[10] The issue, then, is whether the plaintiffs introduced evidence sufficient for a rational jury to conclude that the Board of Trustees discriminated against or retaliated against the plaintiffs, or whether the discrimination was so widespread as to constitute a custom of the school district.

The evidence indicates that in 1986 the board initiated the use of committees in hiring and promoting administrative personnel. The board adopted the new policy after Plaintiff Teijeiro was denied an assistant principal position. Under the new policy, a committee was formed for each opening. The members of the committee were selected at board meetings open to the public. The committee members were made up of parents, members of the community, teachers, and other administrators. Members of a given committee would interview applicants, review the applicants' records, and then score applicants based on various criteria, such as experience, knowledge of the job, and communication skills. Committee members were not allowed to see the scores of other members. The committee members' individual scores were used to compute an overall score for each candidate, and the candidates were then ranked in numerical order. The superintendent had the power to override a committee's choice and recommend a different applicant to the board, but the superintendent did not do so in any of the four jobs at issue in

_____

[10] Jett v. Dallas I.S.D., 7 F.3d 1241, 1245 (5th Cir. 1993).

this trial. The board made all final selections. In the four positions at issue in this trial, the board hired the candidate scored highest by the committee.

There was no credible evidence that the committees for the four jobs at issue discriminated against the plaintiffs on the basis of national origin. Even if the committees did so discriminate, however, the board's approval of the committees' recommendations would not constitute official policy unless the approval was made with deliberate indifference to the plaintiffs' rights.[11] There was no credible evidence that the board was deliberately indifferent to discrimination with respect to the four jobs at issue in this case.

Nor was there evidence that the committee system produced discrimination so widespread as to constitute a custom of the district. The plaintiffs themselves introduced a statistical study made by the defendant's statistical expert, Dr. Edward George, strongly indicating a lack of discrimination. This study examined the 1,060 applicants for 55 administrative positions level 7 and higher during the relevant time period. Of these applicants, 420 were Hispanic and 640 were Anglos. Of the 55 successful candidates, 26 were Hispanic and 29 were Anglos. The study indicates that Hispanics were successful at a slightly higher rate than Anglos were, but that the difference was statistically insignificant.

_____

[11] See Gonzalez v. Ysleta I.S.D., 996 F.2d 745, 760 (5th Cir. 1993).

7

The plaintiffs attempted to deflect the force of this evidence through the testimony of Richard Sida, a personnel expert who was an associate superintendent for Ysleta from January of 1989 to August of 1990 but who has no expertise in statistics. Sida testified that about 2/3 of the successful Anglos in Dr. George's study received the best jobs (level 10 or higher), while only 1/3 of the successful Hispanics received such jobs. This difference cannot give rise to an inference of discrimination, however, because Sida provided no statistics about the racial characteristics of the applicant pool for the positions at level 10 or higher. We simply have no way to determine whether Hispanics were rejected for those positions at a higher rate than Anglos were.

Finally, there was a lack of credible evidence that the plaintiffs were retaliated against by the board. The plaintiffs never did make clear exactly what acts by the district constituted retaliation, and exactly what the plaintiffs did that caused the district to retaliate against them. Most of the testimony regarding retaliation concerned Plaintiff Teijeiro's problems with assistant superintendent Tom Scrivner. Teijeiro testified that Scrivner undermined his authority as principal through various means, including overruling his disciplinary decisions and encouraging his staff to take their complaints to Scrivner rather than him. Teijeiro filed written complaints against Scrivner and sent copies to the superintendent and the board, neither of whom took any action against Scrivner.

8

Even assuming that Scrivner's actions violated Teijeiro's constitutional rights, Ysleta cannot be held liable. There was never any proof that Scrivner acted at the behest of the board. Nor, under the facts of this case, can the board's failure to take action on Teijeiro's complaints give rise to an inference that the board was deliberately indifferent to Teijeiro's constitutional rights.

B. art. 5221k claims

Nava and Armendariz brought art. 5221k claims concerning the principalship of Parkland High School filled on February 10, 1987, and Armendariz brought an art. 5221k claim concerning the principalship at Scotsdale Elementary filled on August 26, 1986. Contrary to the position of the plaintiffs, the district court did not dismiss these art. 5221k claims prior to trial. Rather, these claims were dismissed at the end of trial when the court granted Ysleta's motion for judgment as a matter of law. We review the district court's action de novo.

Disparate treatment claims under art. 5221k follow the McDonnell Douglas-Burdine framework.[12] Under this framework, the plaintiff must first establish a prima facie case of discrimination. Once established, the prima facie case raises an

_____

[12] See Farrington v. Sysco Food Servs., Inc., 865 S.W.2d 247, 250-51 (Tex.App.--Houston [1st Dist.] 1993, writ denied) (utilizing the McDonnell Douglas framework of proof in an art. 5221k claim); Lakeway Land Co. v. Kizer, 796 S.W.2d 820, 822-23 (Tex.App.--Austin 1990, writ denied) (same).

inference of unlawful discrimination.  The burden of production

then shifts to the defendant to proffer a legitimate,

nondiscriminatory reason for the challenged employment action.

If the defendant presents evidence which, if believed, would

support a finding that unlawful discrimination was not the cause

of the employment action, the presumption raised by the

plaintiff's prima facie case disappears.  However, the plaintiff

is accorded an opportunity to show that the defendant's

articulated rationale was merely a pretext for discrimination.

Evidence of pretext will permit a trier of fact to infer that the

discrimination was intentional.  The burden of persuasion remains

on the plaintiff at all times.[13]

A jury question is not presented in every case in which the

plaintiff meets the prima facie case.[14]  Instead, once the

presumption drops out, we test the evidence under the traditional

sufficiency-of-the-evidence analysis enunciated by Boeing Co. v.

Shipman.[15]  Under Boeing, there must be a conflict in substantial

evidence to create a jury question.[16]  Substantial evidence is

defined as "evidence of such quality and weight that reasonable

and fair-minded men in the exercise of impartial judgment might

---

[13] Id.; Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 992-93 (5th Cir. 1996) (en banc).

[14] Rhodes, 75 F.3d at 992-93.

[15] Id. (citing Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969) (en banc)).

[16] Boeing, 411 F.2d at 375.

10

reach different conclusions."[17]  A mere scintilla of evidence is not enough, and even if the evidence is more than a scintilla, "Boeing assumes that some evidence may exist to support a position which is yet so overwhelmed by contrary proof as to yield to a directed verdict."[18]

Assuming for the sake of argument that the plaintiffs established a prima facie case,[19]

0. See Herrin v. Newton Cent. Appraisal Dist., 687 F.Supp. 1072, 1074 & n.1 (E.D.Tex. 1987) (citing cases).[20] Ysleta met its burden of production by showing that the successful candidates were selected by the committees.  Nava and Armendariz simply offered no credible direct or circumstantial evidence that the committees ranked them lower because of their national origin.  Statistical and testimonial evidence was overwhelming that the committee members performed their duties honestly and were not motivated by

---

[17] Id. at 374.

[18] Neely v. Delta Brick and Tile Co., Inc., 817 F.2d 1224, 1226 (5th Cir. 1987).

[19] The plaintiffs argue that in order to establish a prima facie case of national origin discrimination under art. 5221k, they must show that (1) they are members of a protected class; (2) they applied for a job the employer was attempting to fill; (3) though qualified, the plaintiffs were rejected by the employer; and (4) thereafter, the employer hired or promoted someone ostensibly less qualified and outside the plaintiff's protected class.

It is not at all clear that the plaintiffs established a prima facie case.  Their argument that the positions they sought were filled by others less qualified depends almost entirely on the fact that the successful candidates had less experience than the plaintiffs.  Yet experience was only one factor upon which the committees ranked the candidates.

11

a discriminatory intent.  Indeed, insofar as the plaintiffs raised any doubts about the use of committees, it was that they were open to "preselection" of candidates who were members of the "good old boy" system.  But by the plaintiffs' own admission the "good old boy" system included men and women, Anglos and Hispanics.  While promotion of those inside the good old boy system may be unfair, it is not evidence of national origin discrimination.  The district court properly entered judgment as a matter of law in favor of Ysleta.

III. Evidentiary Rulings

The plaintiffs complain that the district court abused its discretion in upholding defense objections to various evidence the plaintiffs sought to introduce.  The district court admitted all evidence relevant to the central questions: whether the failure to promote the plaintiffs to the four jobs complained of was discriminatory, and whether the plaintiffs were retaliated against for filing grievances or this lawsuit.  The district court also gave the plaintiffs the opportunity to prove that national origin discrimination was the custom of the school board.  We see little, if any, abuse of discretion in the myriad evidentiary rulings the district court was forced to make in this case.  And any error was rendered harmless by the overwhelming lack of evidence in support of the plaintiffs' claims.

12

AFFIRMED.